UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RICKY RAY ROCKWELL,

           Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner for Social Security,

           Defendant.

Case No. 11-CV-29-JPS

ORDER

      On August 31, 2006, and September 19, 2006, plaintiff Ricky Ray Rockwell ("Rockwell") filed applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") with the Social Security Administration, alleging a disability beginning on May 17, 2006. Rockwell's disability claims were denied both upon the initial application and upon reconsideration. After these denials, Rockwell filed for a hearing before an Administrative Law Judge ("ALJ"). A hearing occurred via video-conferencing on February 18, 2010, where Rockwell and a vocational expert testified. On June 25, 2010, the ALJ concluded that Rockwell was ineligible for SSI and DIB. Subsequently, the Appeals Council of the Social Security Administration denied review, rendering the ALJ's decision final. As a consequence, Rockwell filed this action for judicial review of the Commissioner of Social Security's decision denying the plaintiff's applications for SSI and DIB.

1.    Background

      Rockwell was a "younger individual" when the ALJ determined he was not entitled to disability benefits. (Tr. 31). He attended school through

the twelfth grade and had one year of technical college. (Tr. 31). Rockwell testified that although he had alleged an onset date of May 17, 2006, he had worked at a cheese factory, doing housekeeping work, and at a furniture store in 2007. (Tr. 34-35).

Rockwell identified back pain as his most serious or debilitating problem. (Tr. 36). He alleged that the pain radiated to his knee and that standing for long periods of time made the pain more intense. (Tr. 37). Rockwell testified that he was not currently receiving treatment for his back and he did not take pain medication because he was not sure how it would react with the medication he takes for his mental problems. (Tr. 38). Rockwell also stated that he had a history of two heart attacks that had left him with a weight-lifting restriction of ten pounds. (Tr. 39). He takes medications for his heart problems and for Type II diabetes. (Tr. 40).

Rockwell described his mental problems as manic depression with an explosive temper disorder. (Tr. 41). He described himself as jittery and not entirely functional because of his inability to concentrate. (Tr. 41). Rockwell testified that on a typical day he would check his blood sugar, take his medication, eat breakfast, do light housework, and go out and look for work. (Tr. 43).

Claimant has been dealing with back pain since 1998 when he underwent a diskectomy. (Tr. 629). On July 18, 2007, Rockwell saw Jeremy Jaskunas, M.D., for his back pain. (Tr. 629). Dr. Jaskunas ordered an MRI which revealed a small disc protrusion at the L4-L5 level, as well as post-surgical changes at the L5-S1 level. (Tr. 587). On December 27, 2007, Dr. Jaskunas diagnosed claimant's spinal condition as multi-level degenerative joint disease. (Tr. 626). Dr. Jaskunas opined that, based on claimant's spinal

condition, he could not tolerate strenuous work activity and would not be able to handle his former work or any medium or heavy work. (Tr. 495-96).

On July 10, 2008, Dr. Jaskunas saw Rockwell and noted his past history of cardiac problems that resulted in the placement of a stent in March of 2003. (Tr. 617). According to Dr. Jaskunas's records, Rockwell was managing his heart condition well until a recent incarceration, where he did not have access to his medications, engaged in a strenuous activity (filling sandbags), and consequently developed unstable angina. (Tr. 617). As a result, Rockwell had a cardiac catheterization that revealed a 75% stenosis in his left circumflex artery. (Tr. 617). Subsequently, Rockwell underwent an angioplasty and placement of a bare metal stent. (Tr. 617).

Claimant contends that his bipolar disorder dates back to as early as 1999. On August 7, 1999, Rockwell was admitted to the hospital after two suicide attempts. (Tr. 259-64). Plaintiff's treating psychiatrist, Dr. Royle G. Eenigenburg, M.D., first treated claimant for bipolar disorder in March of 2000. (Tr. 281-311). In September of 2008, Dr. Eenigenburg filled out a Mental Impairment Questionnaire, listing a diagnosis of bipolar disorder. (Tr. 638). According to Dr. Eenigenburg, Rockwell had significant limitations in concentration, marked restrictions in daily living, and marked difficulties in maintaining social functioning. (Tr. 638). Dr. Eenigenburg opined that Rockwell had experienced four or more episodes of decompensation within a twelve month period, each of at least two weeks duration. (Tr. 640).

2.  Standard of Review

When reviewing a Social Security benefits determination, the court must uphold the ALJ's decision if it is supported by substantial evidence and is free of legal error. 42 U.S.C. § 405(g); *Dixon v. Massanari*, 270 F.3d 1171,

1176 (7th Cir. 2001). Substantial evidence is such relevant evidence "as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002). In determining whether substantial evidence exists, the court reviews the record as a whole; however, the court will not substitute its judgment for that of the agency "by reconsidering facts, re-weighing the evidence, resolving conflicts in evidence or deciding questions of credibility." *Schoenfeld v. Apfel*, 237 F.3d 788, 792 (7th Cir. 2001) (citing *Williams v. Apfel*, 179 F.3d 1066, 1071-72 (7th Cir. 1999)). Thus, the standard of review is deferential, requiring only that the ALJ minimally articulate his analysis. Even so, where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). The ALJ is required to build an "accurate and logical bridge" between the evidence and the result. *Id.* at 941. This is not to say that the ALJ must discuss every piece of evidence or testimony. *Zurawski v. Halter,* 245 F.3d 881, 889 (7th Cir. 2001). All the ALJ must provide is a "small glimpse" into his reasoning. *Id.* On the other hand, conclusions of law are not entitled to such deference. Thus, if the ALJ commits an error of law, reversal is required "without regard to the volume of evidence in support of the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

To qualify for disability benefits under the Social Security Act, a claimant must be found "disabled." 42 U.S.C. § 423(a)(1)(E). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (quoting 42 U.S.C. § 423(d)(1)(A)); 20 C.F.R. § 416.905(a). The Social Security regulations create a five-step, sequential test for determining whether a claimant is disabled. *Briscoe v. Barnhart*, 425 F.3d at 351. The first step considers whether the claimant is presently employed. 20 C.F.R. § 416.920(a)(4). The second step evaluates whether an alleged physical or mental impairment (or a combination of impairments) is severe, medically determinable, and meets a durational requirement. *Id.* The third step compares the impairment to a list of impairments that are considered conclusively disabling. *Id.* If the impairment equals one of the listed impairments, the claimant is considered disabled; if the impairment does not equal a listed impairment, the evaluation continues. *Id.* The fourth step assesses a claimant's Residual Functional Capacity ("RFC") – that is, the work the claimant can still do despite his physical and mental limitations – and his ability to engage in past relevant work. *Id.* If the claimant is able to engage in past relevant work, the claimant is not disabled. *Id.* If the claimant has no past relevant work or is unable to engage in this work, the disability determination moves to step five. *Id.* The fifth step also assesses the claimant's RFC, as well as his age, education, and work experience. *Id.* If the claimant can make an adjustment to other work, based on all these factors, he is not disabled. *Id.*

3.      The ALJ's Decision

The court begins by reviewing the decision of the ALJ. In this case, at steps one and two, the ALJ determined that Rockwell had not engaged in substantial gainful activity since May 17, 2006, and that he had severe impairments including: degenerative disc disease of the lumbar spine,

coronary artery disease, left shoulder tendinitis, diabetes mellitus, obesity, bipolar disorder, mixed personality disorder, and a history of polysubstance abuse. (Tr. 12-13). At step three, the ALJ determined that the claimant's combination of impairments did not equal any of the listed impairments. (Tr. 13). The ALJ next determined that Rockwell had an RFC to perform light unskilled work with the following limitations: he is able to lift and/or carry ten pounds frequently and twenty pounds occasionally; he is able to stand and/or walk up to four hours and sit up to six hours in an eight-hour workday, with a change of position every thirty minutes and standing limited to no more than five minutes at a time; he is unable to do repetitive pushing, pulling or reaching; he is able to occasionally twist and stoop, frequently crouch, frequently climb stairs, and occasionally climb ladders; he should avoid concentrated exposure to extremes of heat and humidity; he is able to perform simple, routine work with no public contact; and he would be expected to be absent from work about once a month due to treatment or impairment-related symptoms. (Tr. 15). At step four, the ALJ concluded that Rockwell was unable to perform his past relevant work as a pizza baker, a wrapper and hand packer, a laborer in cheese making, a casino janitor or a furniture assembler. (Tr. 20-21). Lastly, using the Medical-Vocational Rules or grids as a framework, together with the testimony of a vocational expert ("VE"), the ALJ found that plaintiff could perform a significant number of other jobs in the economy and, therefore, he was not disabled. (Tr. 21-22).

4. Discussion

Rockwell disputes the ALJ's determination and alleges that the ALJ committed several errors in reaching his conclusions. First, Rockwell argues the ALJ erred in making his credibility determination. Next, Rockwell argues

Page 6 of 14

Case 2:11-cv-00029-JPS   Filed 01/06/12   Page 6 of 14   Document 18

the ALJ should have given his treating psychiatrist's opinion controlling weight. Lastly, plaintiff asserts that the ALJ's step five decision was based on an improper hypothetical question.

### 4.1 Credibility Determination

Plaintiff first takes issue with the ALJ's credibility determination. A reviewing court may reverse an ALJ's credibility determination only if it is so lacking in explanation or support that it is "patently wrong." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009). In evaluating the credibility of statements supporting a Social Security application, an ALJ must comply with the requirements of Social Security Ruling 96-7p. *Steele,* 290 F.3d at 942. SSR 96-7p requires ALJs to articulate the reasons behind credibility evaluations:

> The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." ... The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

1996 WL 374186, at *4 (S.S.A. July 2, 1996) (hereinafter SSR 96-7p). Here, the claimant argues that the ALJ did not sufficiently articulate the weight he gave to Rockwell's statements and his reasoning for that weight. Moreover, Rockwell contends that the ALJ improperly held the claimant's desire to work against him.

In this case, the ALJ found the claimant's testimony regarding the intensity, persistence and limiting effects of his symptoms not credible "to

the extent they are inconsistent with the [claimant's] RFC." (Tr. 18). While the Seventh Circuit has criticized such boilerplate language as meaningless, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), the ALJ did not limit his credibility determination to solely this language. The ALJ discussed much of the evidence that supported Rockwell's claim of disability, including: Rockwell's daily activities, precipitating and/or aggravating factors; the duration, frequency, and intensity of pain; and the claimant's statements regarding the limiting effects of his back pain, heart disease, and bipolar disorder.

The ALJ ultimately concluded that because the claimant's testimony "lacked coherence," Rockwell's subjective allegations were not fully persuasive. (Tr. 19). Specifically, it appears that the ALJ discounted the claimant's statements regarding the limiting effects of his bipolar disorder on his ability to work. For example, the ALJ cites to Rockwell's testimony regarding how his bipolar disorder effected his ability to work at his pizza place job. (Tr. 18). The ALJ notes that despite his symptoms, the claimant was able to maintain his job at the pizza place. (Tr. 18). Moreover, when asked whether he could return to the pizza place job, the claimant noted that he would likely be unable to work there, not because of his bipolar disorder, but because of his inability to stand. (Tr. 18, 51). As such, the ALJ's decision did not give full credibility to Rockwell's testimony that his bipolar disorder would preclude him from working at all types of jobs.

On the other hand, the ALJ also took into account the claimant's testimony regarding his back pain and inability to stand for long periods of time. Rockwell testified that he did not believe he could return to his previous work at a pizza place and cheese factory because of the jobs'

Page 8 of 14

Case 2:11-cv-00029-JPS   Filed 01/06/12   Page 8 of 14   Document 18

requirement of standing for long periods of time (Tr. 51). Accordingly, the ALJ placed certain limitations on the claimant's RFC that are consistent with the claimant's testimony. Because credibility determinations of an ALJ are entitled to special deference and the ALJ minimally articulated his reasoning for crediting some of Rockwell's statements and discrediting others, the court finds no reason to overturn the ALJ's findings in this respect.

Moreover, it does not appear that the ALJ improperly discredited Rockwell in light of the claimant's statements regarding his work history and his current desire to work. First, while a claimant's good work history should not necessarily be held against him, the fact that a claimant has worked somewhat successfully with the same symptoms now used to support a claim of disability is entirely relevant to the question of disability. Therefore, the court finds it was proper for the ALJ to consider the claimant's past work history in light of the similarity of his past and current symptoms. Indeed, in this case, the ALJ was prudent to note that while the claimant's past and current symptoms were similar, they had worsened over time. (Tr. 18). Yet, the ALJ also found it significant that the claimant indicated his current medications help him. (Tr. 18).

Next, it does not appear that the ALJ improperly held the claimant's desire to work against him. First, it should be noted that a claimant's desire to work is different than a claimant's statements regarding his ability to do that work. This case is a bit unique as Rockwell was required to seek work for child support reasons. The ALJ acknowledged this; however, he found the fact that claimant had recently applied for a job as a server and a cook at a restaurant troubling. This was not simply because Rockwell was attempting to work, but rather because Rockwell never stated that he would be unable

to engage in this type of restaurant work, which would undoubtedly require him to stand a great deal of the time. Understandably, the ALJ appears to have been unable to reconcile Rockwell's silence in this regard with Rockwell's statements concerning his inability to return to his past work at a pizza place and a cheese factory due to the amount of standing required in those jobs. Accordingly, the court finds that the ALJ's credibility determination was not improper. The ALJ adequately articulated his reasoning and, therefore, the court will not disturb this finding.

### 4.2 Treating Source

Rockwell next challenges the weight given to his treating psychiatrist's opinion. Normally, "[a] treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if supported by the medical findings and consistent with substantial evidence in the record." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). "However, 'while the treating physician's opinion is important, it is not the final word on a claimant's disability.'" *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996) (quoting *Reynolds v. Bowen*, 844 F.2d 451, 455 (7th Cir. 1988)). It has regularly been noted in this circuit that "'[t]he patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability.'" *Id.* (quoting *Stephens v. Heckler*, 766 F.2d 284 (7th Cir. 1985)). Thus, an ALJ may discount a treating physician's medical opinion if it "is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability." *Skarbek*, 390 F.3d at 503.

Contrary to the claimant's argument, the ALJ did not reject the opinion of claimant's treating psychiatrist, Dr. Eenigenburg, because he failed to understand Rockwell's bipolar disorder. Instead, the ALJ properly rejected Dr. Eenigenburg's opinions because they were not supported by his therapy notes or his mental status examinations. (Tr. 20). For example, in September of 2008, Dr. Eenigenburg opined that Rockwell had experienced four or more episodes of decompensation within a twelve month period of time, with each episode of at least two weeks duration. (Tr. 641). Yet, the ALJ found that nothing in the record supported this opinion. Indeed, the record contains evidence of only one psychiatric hospitalization in August of 1999. (Tr. 645). And, while a decompensation does not technically require a hospitalization, the ALJ further found that the record contained no clinical documentation supporting any exacerbation or temporary increase of symptoms or signs of bipolar disorder. (Tr. 20). The court's review of the record is consistent with the ALJ's in this regard. Accordingly, the court finds that the ALJ reasonably assigned little weight to Dr. Eenigenburg's opinions regarding the degree of claimant's limitations because they found no support in the record.

### 4.3  Step Five Decision

Plaintiff argues that the ALJ erred in his decision at step five of the sequential disability analysis by failing to include all of the plaintiff's limitations in the hypothetical questions he posed to the vocational expert. Specifically, Rockwell notes that the ALJ's hypothetical questions were incomplete because he omitted any mention of Rockwell's mild to moderate difficulties with concentration, persistence, and pace, and instead, merely limited plaintiff to simple, routine tasks. Under the ordinary rule – that an ALJ's hypothetical questions to a VE "must include all limitations supported

by medical evidence in the record" *Steele v. Barnhart*, 290 F.3d at 942 – these limitations would have to be included as the ALJ found Rockwell had mild to moderate difficulties in concentration, persistence or pace. (Tr. 14). Indeed, the Seventh Circuit has stated that in most cases, employing terms like "simple, repetitive tasks" on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010). However, there is an exception to this rule, when the record indicates that the VE "independently learned of the limitations (through other questioning at the hearing or outside review of the medical records, for example) and presumably accounted for them." *Steele*, 290 F.3d at 942.

The Commissioner argues that the exception applies here because the VE was made aware of claimant's deficiencies in concentration, persistence, and pace when the ALJ asked the VE if jobs would exist for the hypothetical claimant if he must not only be limited to simple, routine work activity, but also must avoid performing complex or detailed work due to the stress involved with that work. (Tr. 61). Specifically, the Commissioner contends that with the added reference to stress tolerance, the hypothetical went beyond the restriction to simple, routine work that the Seventh Court has found lacking. Yet, a careful reading of *O'Connor-Spinner* reveals that a reference to stress tolerance accounts for limitations of concentration, persistence, and pace only when the claimant's limitations are stress or panic related. 561 F.3d at 619. Here, the relevant impairment is not stress or panic related but rather Rockwell's bipolar disorder. Moreover, there is no indication in the record that the disorder is stress induced. Accordingly, the

court finds that the ALJ's hypothetical does not adequately account for Rockwell's mild to moderate limitations in concentration, persistence, and pace. Therefore, the court is obliged to remand this case to the Commissioner.

Lastly, the claimant argues that the ALJ failed to properly capture Dr. Jaskunas's concerns about the claimant's need for alternating positions at work. The ALJ posed two hypothetical questions based on restrictions set out by the treating family physician, Dr. Jaskunas. The ALJ asked about an individual who could change positions, whether sitting or standing, or walking at about thirty-minute intervals. (Tr. 63). The ALJ explained that he was not talking about a need to shift at will or lie down, but rather a need for a "quick stand" or quick sit, and that the individual should walk for no more than five minutes at a time. (Tr. 63). Rockwell argues that the ALJ's interpretation of Dr. Jaskunas's opinion is incorrect. In particular, Rockwell argues that the ALJ's characterization of Dr. Jaskunas's opinion as a limitation requiring a quick stand or quick sit is incorrect, and instead, the opinion describes a person who must get up and walk around every 30 minutes and each time walk around for five minutes. Based on its review of the ALJ's discussion with the VE, including the wording of the hypothetical, as well as Dr. Jaskunas's opinion, the court finds that the ALJ reasonably interpreted the opinion and incorporated it properly into his hypothetical. However, because the court is remanding the case for the ALJ to revisit the issues stemming from his failure to reference the claimant's limitations in concentration, persistence, and pace in his hypothetical, the court will also direct the ALJ to revisit his interpretation of Dr. Jaskunas's opinion if he deems it necessary.

Accordingly,

IT IS ORDERED that the decision of the Commissioner denying the claimant's applications for Supplemental Security Income and Disability Insurance Benefits be and the same is hereby VACATED and REMANDED for further proceedings consistent with this opinion.

The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 6th day of January, 2012.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge